UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID NIEMAN,<br>    *Plaintiff*, | )  CASE NO. 3:24-cv-01366 (KAD)<br>)<br>) |
| v. | )<br>) |
| CHENEY, *et al*,<br>    *Defendants*. | )  NOVEMBER 25, 2024<br>) |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff, David Nieman ("Nieman" or "Plaintiff"), a sentenced prisoner at Cheshire Correctional Institution ("Cheshire"), filed this complaint *pro se* pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth amendment rights. Nieman seeks damages from named defendants Correctional Officers ("COs") Cheney, Agosto, and Ismaili, Lieutenant ("Lt.") Wright, Nurse Brennan, Commissioner Quiros, Warden Reis, and Deputy Warden Pierce.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (quotation

omitted). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Nieman's allegations are accepted as true for initial review. They are summarized as follows.

Nieman had a hostile verbal exchange with another inmate, Aveles, while at Cheshire in April of 2022. Compl., ECF No. 1 at ¶ 12.[1] During that exchange, Aveles made threats of harm toward Nieman. *Id.* Correctional Officer Cheney witnessed Aveles make these threats towards Nieman. *Id.* at ¶ 13. Nieman was later showering in the shower area when the Medical Department called Cheney to direct him to send Aveles to the Department with a full staff escort. *Id.* at ¶¶ 14–15. Cheney opened Aveles's cell door without a full staff escort. *Id.* at ¶ 16. Aveles ran out of his cell to the shower area and assaulted Nieman while Nieman was naked in the shower. *Id.* at ¶ 17. Aveles repeatedly struck Nieman with closed fists in his face, head, and body, and grabbed his genitals, resulting in "[l]acerations, cuts, bruising to his face, head, and his [b]ody." *Id.* at ¶¶ 18, 29. The assault occurred in direct view of the officers' control desk. *Id.* at ¶ 19. Cheney made no effort to intervene in the assault. *Id.* Cheney "waited awhile" to call a "Code Blue" for additional staff to respond to the assault. *Id.* at ¶ 20.

Several correctional staff responded to the Code Blue, including COs Ismaili and Agosto, and Lt. Wright. *Id.* at ¶ 21. Agosto sprayed Nieman with pepper spray while Aveles was assaulting Nieman. *Id.* at ¶ 22. Ismaili and Wright stood by watching and failed to intervene in the assault or

---

[1] Plaintiff hand numbered his Complaint, but did not number any of its attached documents. For ease of reference, when the Court refers to page numbers in Plaintiff's Complaint, it refers to the numbers provided by the CMECF system.

prevent Agosto from pepper spraying Nieman. *Id.* at ¶¶ 23–24. Nieman was then escorted to the Medical Department and seen by Nurse Brennan. *Id.* at ¶ 25. Brennan, Cheney, Agosto, Ismaili, and Wright failed to properly decontaminate Nieman. *Id.* at ¶¶ 26–27. Nieman was "in tremendous pain" after being pepper sprayed. *Id.* at ¶ 28. Nieman's "eyes and skin, and his face and entire body were burning as if on fire." *Id.* Nieman was then escorted to the Restrictive Housing Unit and "left there to sit in his cell alone and suffer." *Id.* at ¶ 30.

**Discussion**

Nieman alleges claims under the Eighth Amendment for failure to protect him against Aveles' assault, excessive use of force, failure to intervene in the excessive use of force, and deliberate indifference to his medical needs.[2] *See id.* at ¶¶ 39–42. Nieman is seeking compensatory and punitive damages. *See id.* at p. 16.

**Deliberate indifference for failure to protect against an inmate assault**

Nieman alleges an Eighth Amendment deliberate indifference claim against CO Cheney for failing to protect Nieman from Aveles' assault in the shower area. *See id.* at ¶ 39. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). However, "not every injury suffered by one prisoner from another prisoner establishes

---

[2] Though Plaintiff avers that he has "fully exhausted all available administrative remedies with regard to the claims in this case," Compl. at ¶ 38, the administrative documents that he attached as "Attachment B" to his complaint only include his allegations against CO Cheney for failure to protect against an inmate assault. *Id.* at pp. 22–28. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq*., exhaustion of administrative remedies is an affirmative defense rather than a pleading requirement. S*ee Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). The Court notes, however, that the Inmate Request Form, Inmate Grievance, and Inmate Grievance Appeal that comprise Attachment B do not address Plaintiff's claims for excessive use of force, failure to intervene, or deliberate indifference to his medical needs. Nor do they name any Defendant other than Cheney.

constitutional liability on the part of the prison official." *Rivera v. Hackett*, No. 3:18-CV-969 (MPS), 2018 WL 3489587, at *2 (D. Conn. July 18, 2018) (citing *Farmer*, 511 U.S. at 834). Rather, a prison official violates a prisoner's Eighth Amendment protection against cruel and unusual punishment only when two requirements are met. *Id.*

First, the plaintiff must prove that the deprivation was "objectively, sufficiently serious[.]" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the defendants' failure to prevent harm, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

Secondly, the plaintiff must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. In cases involving the failure to prevent an attack from another inmate, a prisoner may prove deliberate indifference by

showing that the official had actual knowledge of a "longstanding, pervasive, well-documented, *or expressly noted*" substantial risk of inmate attacks. *See id.* at 842–43 (emphasis added).

Nieman's allegation that another inmate "made threats of harm," Compl. at ¶ 12, towards him and then subsequently assaulted him are sufficient to show a "substantial risk of serious harm to his health and safety." *See*, *e.g.*, *Weatherwax v. Barone*, No. 3:19CV1502 (KAD), 2019 WL 6216690, at *3 (D. Conn. Nov. 21, 2019) (citing *Farmer*, 511 U.S. at 834) (plaintiff who was confined to cell with another inmate "who had repeatedly threatened to harm him physically and then followed through with this threat constituted a condition that posed a substantial risk of serious harm to his health and safety."). Further, Nieman's allegation that Cheney "witnessed, first hand, the verbal exchange where inmate Aveles made threats of harm toward [Nieman]" and then let Aveles out of his cell without an escort, Compl. at ¶¶ 13, 16, satisfies the subjective element of Nieman's deliberate indifference claim for failure to protect because Cheney "expressly noted" the threat by observing it. *See Weatherwax*, 2019 WL 6216690, at *4 (finding subjective element satisfied where defendants "were aware of the risk of harm that his confinement with his cellmate posed to his health and safety and they failed to take measures to abate the harm."). Nieman's Eighth Amendment deliberate indifference claim for failure to protect may proceed against CO Cheney in his individual capacity.

**Excessive force relating to use of pepper spray**

Nieman next alleges that CO Agosto used excessive force against him by pepper spraying him. Compl. at ¶ 40. When an inmate makes an Eighth Amendment claim that excessive force was used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *See Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993). The objective component relates to the seriousness of the injury. *See Davidson v. Flynn*, 32 F.3d

5

27, 29 (2d Cir. 1994). A plaintiff need not prove that he suffered a serious or significant injury, however, to state a claim of excessive force. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (holding "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present); *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir. 2000) (holding "no such showing of extreme injury is required when the claim is that prison officials used excessive force"); *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir. 1999) (holding that malicious use of force to cause harm constitutes an "Eighth Amendment violation[ ] per se . . . whether or not significant injury is evident."). This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson,* 503 U.S. at 2 (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

The subjective component requires the inmate to show that the prison officials acted wantonly. To state the subjective component of an excessive force claim, the inmate must show that the prison officials acted "maliciously and sadistically to cause harm[.]" *Id.* at 7. Even de minimis uses of force are unconstitutional if they are "repugnant to the conscience of mankind." *Id.* at 10–11 (internal quotation marks and citations omitted). The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)). The Court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

Nieman alleges in his complaint that after Agosto sprayed Nieman with the pepper spray, Nieman's "eyes and skin, and his face and entire body were burning as if on fire." Compl. at ¶ 28.

6

Assuming this injury satisfies the objective component, Nieman has failed to allege facts establishing the subjective component—that Agosto pepper sprayed him "maliciously or sadistically" rather than in a "good faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 34 (quotation omitted).

Nieman alleges that Agosto "unnecessarily sprayed the plaintiff with chemical agents . . . in his face, head, and [b]ody" while Aveles was assaulting him in the shower area. *See* Compl. at ¶ 22. Nieman's claim that Agosto "unnecessarily" sprayed him is conclusory. "Conclusory allegations, in and of themselves, that an excessive amount of OC spray was utilized during an altercation is insufficient to create a triable issue of fact." *Campbell v. Hanson*, No. 17-CV-1024 (ALC), 2019 WL 2717691, at *4 (S.D.N.Y. June 28, 2019) (citation omitted). That Agosto sprayed Nieman "[a]s [Nieman] was being assaulted," Compl. at ¶ 22, is not conclusory, but it shows that Agosto sprayed Nieman in an effort "to maintain or restore discipline," rather than "maliciously or sadistically." *See*, *e.g.*, *Campbell*, 2019 WL 2717691 at *4 (quoting *Wilkins*, 559 U.S. at 37) (concluding that officer who discharged OC spray "in an effort to break up [an] altercation" did so, not to cause harm, but 'in a good faith effort to maintain and restore discipline.'"); *Berry v. City of New York*, No. 12-CV-7819 (RWS), 2014 WL 2158518, at *5 (S.D.N.Y. May 22, 2014) (finding evidence that officer used pepper spray to break up violent fight between inmates insufficient to raise a genuine dispute about excessive force and thus granting summary judgment to officer); *Quinones v. Rollison*, No. 18-CV-1170 (AJN), 2020 WL 6420181, at *4–5 (S.D.N.Y. Nov. 1, 2020) (finding that the officer defendant was entitled to summary judgment because the officer defendant used a chemical agent against two inmates who were in the midst of a violent fight). Therefore, Nieman's Eighth Amendment claim against CO Agosto for use of excessive force resulting from his deployment of pepper spray is dismissed.

**Failure to intervene to stop Agosto from pepper spraying Nieman**

Nieman next alleges that COs Cheney and Ismaili and Lt. Wright failed to intervene to stop Agosto from pepper spraying Nieman. *See* Compl. at ¶ 40. To state a claim for a prison official's failure to intervene to stop or temper the use of force, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), aff'd sub nom*., Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Even assuming Nieman established that Cheney, Ismaili, and Wright "had a realistic opportunity to intervene and prevent the harm" (element one) and "did not take reasonable steps to intervene" (element three), he must also allege that "a reasonable person in the officer's position would know that the victim's constitutional rights were being violated." *Jean-Laurent*, 540 F. Supp. 2d at 512. A reasonable person in the officer's position would not know that Nieman's constitutional rights were being violated because, for reasons stated above, Plaintiff has failed to allege that Agosto used excessive force. "[B]ecause '[t]here can be no failure to intervene . . . where there was no constitutional violation,' [Nieman's] failure to intervene claim against [Cheney, Ismaili, and Wright] must also fail." *Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018) (internal citation omitted; bracketed material substituted). Nieman's Eighth Amendment failure to intervene claim against COs Cheney and Ismaili and Lt. Wright is dismissed.

**Deliberate indifference to serious medical needs**

Nieman next alleges that Nurse Brennan, COs Cheney, Agosto, and Ismaili, and Lt. Wright were deliberately indifferent to his serious medical needs by failing to decontaminate him after he was pepper sprayed. Compl. at ¶ 41. Nieman alleges his "eyes and skin, and his face and entire body were burning as if on fire" after Agosto pepper sprayed him. *Id.* at ¶ 28. Nieman claims that defendants "chose, intentionally, to disregard the fact that [he] was in extreme pain and was suffering" and "escorted [him] to the [r]estrictive housing unit (RHU) and left [him] there to sit in his cell alone and suffer." *Id.* ¶¶ 27, 30.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). A claim for deliberate indifference to medical needs is comprised of objective and subjective elements. Objectively, the plaintiff must allege a "sufficiently serious" medical condition. *Id.* (citation omitted). Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). This culpable mental state exceeds mere negligence and is akin to criminal reckless intent. *See Farmer*, 511 U.S. at 839–40; *Zafrin v. Department of Corr.*, No. 3:22-cv-1339 (KAD), 2023 WL 8653940, at *5 (D. Conn. Dec. 14, 2023).

"Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention." *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2018 WL 4604308, at *9–10 (D. Conn. Sept. 25, 2018) (quoting *Parsons v. City of New York*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *4 (E.D.N.Y. June 19, 2017)) (holding that a prisoner plaintiff states a plausible claim against officers for deliberate indifference to serious medical needs if he "alleges that the officers sprayed [him] with mace,

which caused Plaintiff's eyes, face and skin to burn, and subsequently denied him any medical treatment . . . ."). Nieman's allegation that his "eyes and skin, and his face and entire body were burning as if on fire," Compl. at ¶ 28, satisfies the objective element that he suffered from serious medical needs. *See*, *e.g.*, *West v. City of New York*, No. 13 CIV. 5155 PAE, 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (prisoner established existence of a "serious medical need" because he was sprayed with mace, resulting in "difficulty breathing, severe itching and burning, and skin discoloration"); *Santos v. N.Y.C. Dep't of Correction*, No. 08 Civ. 8790 (GBD) (THK), 2010 WL 1142066, at *10–11 (S.D.N.Y. Feb. 25, 2010) (prisoner established a "serious medical need" where he was sprayed in the face with a fire extinguisher, causing pain in his face and left eye).

Nieman's allegation that officials intentionally placed him alone in a cell instead of providing medical treatment for his burns, *see* Compl. at ¶¶ 27, 30, satisfies the subjective element of his deliberate indifference claim. *See El-Massri*, 2018 WL 4604308 at *9 (concluding that plaintiff had adequately stated objective element of deliberate indifference claim by alleging that "defendants were aware of a substantial risk of serious harm to the Plaintiff but failed to provide access to a shower."). *See also Al-Bukhari v. Semple*, No. 3:16-CV-1428 (SRU), 2017 WL 2125746, at *4 (D. Conn. May 16, 2017) (prisoner stated Eighth Amendment claim for deliberate indifference to serious medical needs by "alleg[ing] that he informed the correctional officers and nurses that he was suffering from extreme pain as a result of being sprayed with a chemical agent and the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent."); *West v. City of New York*, No. 13 CIV. 5155 (PAE), 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (finding that a prisoner stated an Eighth Amendment claim for deliberate indifference to serious medical needs because after a correction officer sprayed him with mace, "she and other corrections officers left him in the shower for approximately two

hours" while he coughed and "his skin was burning"). Having sufficiently pled both elements, Nieman's deliberate indifference to serious medical needs claim may proceed against Nurse Brennan, COs Cheney, Agosto, and Ismaili, and Lt. Wright in their individual capacities.

**Supervisory liability**

Nieman last alleges a deliberate indifference to serious medical needs claim against Commissioner Quiros, Warden Reis, and Deputy Warden Pierce, who are all prison supervisors. For deliberate indifference claims against prison supervisors, the inmate "must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Thus, "[a] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 618 (internal quotation marks and citation omitted). Nieman does not allege that these supervisors were involved with decontaminating him. Rather, he alleges these officials "have continued to enforce an illegal, ineffective practice" of failing to decontaminate prisoners by only "shov[ing] [an inmate's head and face] under warm shower water for mere seconds" and taking no further action to decontaminate them. Compl. at ¶¶ 34, 36 (bracketed material reordered). Nieman alleges this practice led to him being improperly decontaminated. *See id.* at ¶ 37.

"While *Tangreti* overruled *Colon's* five-factor test, including factor (3)—'the defendant created a policy or custom under which unconstitutional practices occurred,'—it did not 'suggest' that a defendant who 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,' cannot be found liable under Section 1983." *Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) (internal citation omitted) (citing *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL

11

4463033, at **6–8 (S.D.N.Y. Sept. 28, 2021)). But "courts in this Circuit have required that plaintiffs plead more than conclusory allegations of the existence of the custom or policy." *Lindsey v. Butler*, 43 F. Supp. 3d 317, 330 (S.D.N.Y. 2014), on reconsideration in part, No. 11 CIV. 9102 ER, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) (collecting cases). *See also Gomez v. City of Norwalk*, No. 3:15-CV-01434 (MPS), 2017 WL 3033322, at *4 (D. Conn. July 17, 2017) (collecting cases holding same).

Nieman alleges that Quiros, Reis, and Pierce have maintained a practice of insufficiently decontaminating prisoners after they are exposed to a chemical agent in contravention of a "Material Safety Data Sheet" for "SABRE Red H20 & CFT," the pepper spray deployed by officers at the prison. *See* Compl. at ¶¶ 31–36; pp. 19–21. Nieman maintains that this Material Safety Data Sheet is "generated by the manufacturers of pepper spray (Sabre Red H20)." *Id.* at ¶ 32. The Material Safety Data Sheet indicates that it "[m]ay be used to comply with OSHA's Hazard Communication Standard, 29 CFR 1910.1200." *Id.* at p. 19. Thus, Nieman essentially alleges the prison's regular practice of decontaminating prisoners does not comply with OSHA safety standards.

Nieman's allegation that there was a "policy" in place is conclusory. But he has alleged sufficient facts at this early stage to state that there was at least a "custom" of inadequately decontaminating prisoners after being pepper-sprayed, which, if true, could constitute deliberate indifference to the serious medical needs of prisoners like Nieman, for reasons stated above. Nieman's deliberate indifference to serious medical needs claim may proceed against Commissioner Quiros, Warden Reis, and Deputy Warden Pierce in their individual capacities.

**Orders**

Nieman's Eighth Amendment deliberate indifference claim for failure to protect may proceed against CO Cheney in his individual capacity. Nieman's deliberate indifference to serious medical needs claim may proceed against Nurse Brennan, COs Cheney, Agosto, and Ismaili, Lt. Wright, and Commissioner Quiros, Warden Reis, and Deputy Warden Pierce in their individual capacities. All other claims are dismissed.

The court enters the following additional orders.

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided on or before **December 16, 2024**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send Nieman a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **June 25, 2025**. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed on or before **July 25, 2025**.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Nieman changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case.** Nieman must give notice of a new address even if he is incarcerated. Nieman should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Nieman has more than one pending case, he should indicate all the case numbers in the notification of change of address. Nieman should also notify the defendants or the attorney for the defendants of his new address.

(10) Nieman shall utilize the Prisoner Efiling Program when filing documents with the court. Nieman is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of November 2024.

                                                    */s/ Kari A. Dooley*
                                                    KARI A. DOOLEY
                                                    UNITED STATES DISTRICT JUDGE